Before we begin, the panel has noted the absence of a hard copy appendix in this case, and I know that you made a motion and had the court's permission to do that, but the panel believes that that is a very bad idea, not to have a hard copy appendix. It really impairs our ability to prepare, and most important, it impairs our ability to have the appendix in front of us for those of us who don't bring laptops to the oral argument. So I would discourage doing that in the future. I mean, the way that, you know, instead of, I understand the confine the appendix to what's necessary. Your Honor, the reason I made the motion and it was approved by the court I know it was. Was because I said a small office, I cannot do that in-house. If I was going to do it, I'd have to farm that out and protect the documents, and that was really the problem. Well, you hear what the panel is saying. Yeah, I do. It's difficult, and it doesn't, we don't have any... And I'll remember that for the future, and I apologize. Okay. So, that's not going to count against your time. Mr. Bellman, why don't you start. Okay. Good morning. May it please the court, my name is Daniel A. Bellman, and I am here for 3S Consulting. I'm here for two reasons today. First, I'm here to represent my client, who is a good client, has excellent performance readings, and submitted the low-cost proposal in this case, and he was denied consideration. And what we're still seeking is notice of any follow-on procurement, which notice has never been agreed to. The second reason is, I saw very important issues here concerning the respect for and the credibility of the court and its injunctive orders, and I thought this case presented such a unique, and in my mind, unusual fact pattern. In fact, I practiced in this area for over 30 years, and I have never seen facts quite like this case, and I thought that these facts deserve to go to this court for review. And in fact, we were right in the middle of motions and producing documents, so we could make an assessment. Could you address the standing issue, and specifically that the effect of your client, 3S Consulting, not having an FSS contract at the time, or a number at the time. Right. Okay. In terms of standing, our basic point is that for the Army to reject 3S Consulting for not having an FSS contract, and yet follow none of the procedures for the FAR Part 8 FSS procurements, and award to a non-FSS contractor, was wrong. And I see two approaches for why we would have standing. Under the first scenario, for all the failures in this case, in complying with the FAR Part 8 procedures, and there are lots of reasons why procedures for a normal FAR Part 8 procurement were not followed, for all those reasons, this really should be interpreted as an unrestricted procurement. The government might have intended this to be a FAR Part 8 procurement, but it failed. Well, how do you get around blue and gold in that respect? How do you get around blue and gold? Well, the answer for that is very simple. We had no protests before the bids closed, before the proposals were in, because, first of all, we interpreted this as not restricted to FAR Part 8 procurement, but secondly, even if it was, we would have no protests. I mean, the government can procure under FAR Part 8. They just didn't follow the procedures and didn't award to a FAR Part 8 contractor. Well, I guess there are two separate questions. One is whether you were a qualified bidder because you didn't have a MOBIS contract. And that's the issue that's related to standing. And to the extent that you say that the procurement didn't or shouldn't have required a MOBIS contract so that you were a qualified party, that was something you could have raised. Well, not really. Wait, wait, wait. You can't interrupt. That's something you should have raised during the initial phases of this. Well, Your Honor, again, my client, Sumon Sarkar, did not interpret this as a FAR Part 8 procurement. And there's language in the procurement to indicate that it was not restricted to FAR Part 8 contractors. The way it was synopsized showed it was not a FAR Part 8 procurement. Well, fair enough. But there is conflicting language. But our cases, including Blue and Gold and some of the earlier cases, the site says that if there is an ambiguity, a patent ambiguity like that with conflicting language, that's something that you have to raise in advance. You can't wait. Well, again, perhaps because of his background, not being from the United States originally, maybe he didn't recognize that ambiguity. He raised the ambiguity, but he raised it too late. Well, it was only when the contracting officer said, oh, we're not considering your contract. No, all the bids were in and the contract had been awarded and that's when the issue was raised. And that's too late under the case law. Well, here is my point. If this was a FAR Part 8 procurement and he did nothing more than say, well, I can't submit a proposal, but I'm interested in this contract, then we would have no problem with a FAR Part 8 procurement. And if they, in fact, followed FAR Part 8 procedures and, in fact, awarded to an FSS contractor with a proper schedule, we would have no problem. But when they don't, we would still have the right to submit. You're addressing another issue. The standing issue is whether you have the standing to bring a claim. And so we're asking you questions regarding the requirement that an FSS MOBIS contract, bidders have to have a MOBIS contract number. An FSS has to be on the schedule. I guess my point is that we would have standing in this case, even if we had not submitted a proposal. Under ATA defense and mobile medical, you know, if at least the lower court... If you file a protest, you have to have some sort of prejudice, some sort of damages. If you don't bid at all, are you saying that if you don't bid at all, you have standing to bring a claim at the court of damages? Yes, I am. And that's what ATA defense did and MOBIS medical. The point there is they were prevented from bidding, but, you know, there was an expression of interest. And when they discovered that the government was not following proper procedures, they still had standing because they were an actual prospective bidder. They had expressed interest in this, but for the fact that the government improperly restricted competition. They improperly restricted competition because they said it's only to part A GSA scheduled contractors, but then it went ahead and awarded to someone else. Well, if, and I'm looking for the case, I think it was MOBIS medical. If, yeah, it was MOBIS, mobile medical, I'm sorry, which said that, you know, the way you look at standing is if they were prevented from bidding on the procurement and, you know, that was in violation of controlling statutes and regulations because this ended up, they were not following the procedures, there was no justification. Well, how were they improperly prevented from bidding here? Well, the argument would be that if you, I still think there's a good argument that this is not a far part A procurement, it failed, but if you find that it's a far part A procurement, then they were prevented from bidding for the reasons that Judge Reyna had mentioned, that they couldn't submit the bid because they didn't have a GSA schedule at that time. Well, what's wrong with that? I mean, the agency can require a MOBIS contract, right, a GSA contract. Only if they follow the procedures. If they don't follow the procedures, then that... What procedures? Well, the procedures would be first the language, and we're aware of that, so I won't go over that, but there was to me it's implied that it was not required. The way it was solicited, it was synopsized. All far part A procurements are competed under the GSA eBuy system, but this was synopsized, and the FAR specifically says you do not synopsize far part A procurements. In the synopsis, it said this was a far part 12 procurement. It did not say it was a far part A procurement. It said it was a far part 12 procurement. Usually, far part 12 procurements are competed under part 13, part 14, or part 15. Three contractors were not solicited. The synopsis does say that, but then it goes on to say in accordance with the format and sub part 12.6, I think that's what you're talking about, it goes on to the S supplement with additional information included in this notice. When you go to the actual bid notice itself, it tells you on the face that this is a MOBIS contract. I think by saying MOBIS, I don't interpret it, and my client did not interpret it as being GSA schedule only. It goes on with the requirement. Certainly, that schedule, 874.3, I think it was at that time, was MOBIS, but it's undefined. It doesn't say that means that under that schedule. It just means mission-oriented business. It doesn't say it has to be a GSA schedule MOBIS under this. It's just really pretty much undefined. That's one of the problems. Finally, three contractors were not solicited as were required for this size of a procurement. I talked about that at my brief at page 46. Before awarding the contract, the contracting officer did not look at the labor categories and MHOI schedule to make sure the labor categories covered all the requirements of the performance work statement. That was in violation per the Arison case. Then finally, even after knowing that she had made a mistake, we filed a protest and they looked at it, protest dismissed. But before we filed the protest before the Court of Federal Claims, there was a discussion with our attorney. She knew she was wrong. She knew they were not entitled, yet she proceeded with a contract award. If we were to find that the trial court was correct, that this was a contract awarded through the GSA FSS procedure, then would you at that point concede that you don't have standing? I'm sorry, could you repeat the question? Okay. If we accept the decision of the Court of Federal Claims that you cannot challenge that this contract was awarded through the GSA FSS procedure, if we affirm that decision that this was awarded through the FSS procedure, then would you accept or would you concede that you would lack standing? Absolutely not. And here's the reason. It's the second part of the problem. And the key part of the lower court decision is at Appendix A, 21 through 22, and I apologize for not having the hard copy. But in that part of the decision, the main paragraph in there talks about the ATA decision, and the lower court judge says, well, ATA applies only to knowing violations of Part VIII. Here, it was not a knowing violation. I think that's wrong. There's no mens rea requirement. This isn't a criminal case. The issue is whether they violated the regulations or not. It doesn't matter whether it was intentional, knowingly, or inadvertent, or negligent, or reckless. But then the other key sentence, and this is an absolutely wrong statement and a misunderstanding of how the FSS procedures work. The lower court starts with the sentence, put another way, correction of the alleged violation would not make plaintiff a qualifying lawful award. Here's the key words. Even if the government corrected its alleged error, the beneficiaries of this correction would be only those contractors who possessed a MOBIS contract and who were thus qualified to receive the award. That is absolutely untrue. It's a misunderstanding of how the FSS procedures work. If this was corrected and MHLI was found, well, you can't get the awards, so we're going to have to go to the next slide. Well, two of the four bidders were misled into thinking this was not a... Why couldn't they re-bid the contract? You could re-bid the contract, and then we would be entitled to bid, and that's where we become... By then, you would have been MOBIS qualified, do you mean? Oh, yeah, we were MOBIS qualified, but either they bid unrestricted, or they would have bid MOBIS, and at that point, we were qualified. But the state... Wait, your argument really is, it seems to me, that if you had succeeded in the challenge, you would have been able to receive the award, because by that time, you would have had a MOBIS contract. Is that the point? That would be one part of my point, yes. The other part of my point is they might go out and re-bid it under an unrestricted basis. That seems to be the point. And in fact, that's what Mobile Medical had said. Was 3S next in line to get the contract? Was there another contractor, a qualified contractor before 3S? DRC? No. It was only MHLI and DRC, and DRC was rejected. That's high risk. Pardon? That's high risk. That's high risk, which was not part of the evaluation criteria, so my view of that is she was essentially saying they were non-responsible. Well, you're into your rebuttal time here. We'll give you two minutes for rebuttal. Okay. And we'll hear from the government. Should I sit down then? Yes. Okay, thank you. Mr. Major. Thank you, Your Honor. May it please the court. Standing focuses upon the contractor raising the challenge before the court. In this case, the contractor, 3S Consulting, acknowledges. He's saying at the end of his argument, he says what? Okay, we weren't qualified at the time we bid on this, but if our challenge had been successful, we would have had a chance to receive the contract because by that time, we were no disqualified. So we did, as I understand his argument, we did have a substantial chance of receiving the award if we were successful because if they were forced to re-bid it, we would have been qualified at that time. Do you understand that? Yes. And I think there are a couple of problems with that. First, it requires this court to set aside a huge line of case law talking about from Myers Investor and Services Board about a non-responsive bidder being the epitome of one without a direct economic interest. Moreover, it seems to be the exact... We've never had a case exactly like this, at least that I can recall or that I'm familiar with, where somebody said, yeah, at the time I bid, I wasn't qualified, but I would have been qualified if I'd succeeded because by that time, I had a MOBIS contract. Are you familiar with any case exactly like that? Not exactly like that, but it seems like this is very similar to the argument that was raised by the plaintiff before this court in the Labatt case. In the Labatt case, the plaintiff, citing to this court's decision, in Oppressione Constituzione Garuffi, had argued that because I found an error and that error causes the government to have to blow up the entire procurement, set aside the entire procurement. And when they set aside the entire procurement, I can come in and re-bid. I have standing. And the court rejected that because they said, no, the test for standing is, but for the error alleged, you were prevented from... you had a substantial chance of award. In that case, they determined, but for the error alleged, they did not have a substantial chance of award. The error alleged here was the award to an FSS contractor. And let me clarify something. I think when counsel talks about they did not award to an FSS contractor, he means they did not award to an FSS contractor who had this particular item on their schedule, not that they did not award to a Federal Supply Schedule contractor because there's no debate. The record is clear that the awardee, MHLI, did have a Federal Supply Schedule contract, unlike 3S. The question was whether they had that particular item ultimately on their schedule, whether their more general pronouncements were sufficient to encompass the specific web-based services that were at issue here. And that's a very important distinction because the government issued a request for quotation. That sounds like a merit, Sergeant. That sounds as though the challenge didn't have any merit to it because there wasn't a requirement that you have this web-based capability. I understand that argument. It's more argument than standing. I think for standing we have to assume that they have a good claim on the merits and that if they succeeded, the thing would have had to be re-bid. And what they're saying is if we succeeded on the merits and it were re-bid, we would have a substantial chance of securing the award because at that point we would be a qualified bidder. And the other problem with that contention also is divorced from the facts regarding the other offeror, DRC. And DRC, let me clarify, and the record is quite clear on this, DRC was in the competitive range. There was a best value trade-off analysis determining who was ultimately going to get awarded, whether it was MHLI or DRC. DRC was in the running. They were not rejected. They were not found non-responsive. Their risk was a concern to the government and the government often will trade-off and analyze whether considering pricing, considering any number of factors, which of the two parties that are within its range, in this case, it would award to. Sometimes you'll have three parties, sometimes you'll have four parties, but those parties are within the range and the zone of active consideration. I mean the record itself, there's a very detailed trade-off decision at 543 through 554 of the record that details how the government went about selecting MHLI over DRC. So, I mean, ultimately, DRC would have had the standing actually to challenge. But didn't the government decide not to award to DRC once these problems arose and to re-bid it and that the re-bid never actually took place? Is my memory about that correct? They could have. I mean nothing's happened on this contract since 2010. I mean there's no record. Is my statement correct? What's that? Is my statement correct that the government decided to re-bid it and didn't? No, the government hasn't re-bidded this at all. I know it hasn't re-bid, but did it decide that it wasn't going to award to any of the parties here and that it was either going to not have a contract or re-bid it? Well, the government had looked at re-bidding it, the contract. It had looked at any number of options. It wasn't certain what it was going to do. There was a lot of back and forth at the time. This was before the court. But the government, what are we going to do? What are we going to be able to do with the court proceeding forward? Ultimately, before this even went to court, the government had decided not to exercise the option years on a mutualized contract. But what it would have done at this point is unclear because it depended upon ultimately what errors existed, the court found, in the pyramid, if any. When did 3S become qualified? When did it get its MOBIS contract? I do not know the date of that. I believe, given the length of this protest, it was sometime during the pendency of the protest. But I don't know the exact date, Your Honor. They didn't have it at the time they filed. They did not. In the court of federal claims, no. They did not, and the record is clear on that. And 3S has acknowledged that. Just to quickly clarify a couple of points. With regards to Mobile Medical, Mobile Medical ultimately found that there was no standing because of no prejudice. While they do engage in sort of a dicta analysis, talking about ATA and saying they believe that ATA was a good decision, ultimately the court doesn't rely upon that. The protester in that case was kicked out for a lack of standing because of a lack of prejudice. So I don't believe Mobile Medical would support their claim. And I think the court's decision does well summarize the court of federal claims decision in ATA in this case. That was a very different situation involving a sole source award. And unless the court has any other questions? Thank you very much. Thank you, Your Honor, for these reasons and the reasons set forth in our brief. We respectfully request that the court confirm the decision of the court of federal claims. Thank you. Mr. Bellman, you have two minutes. Okay. First of all, if you look at the American Systems Consulting decision for the GAO, if you look at the ERSA decision, if you look at the ATA decision, all those say that you need to have all the items on the schedule for this to be a proper FSS procurement. Just having a schedule is not enough. Schedules vary, and I gave some examples of that between DRC, which did have web-based services, versus NHLI that did not. So it's not a uniform thing. It's like saying there's a group of manufacturers, but each one is a little bit different. The key language in terms of DRC, I just wanted to say that if you look at the Appendix 560 to 561, I've been in this area for over 30 years. I mean, when I read that letter, that tells me it's going to be the next ice age before DRC is going to get this contract. That's my view of things. And finally, this is, I think, perhaps addressing some of the interests and concerns you had. It's important language in mobile medical. And in mobile medical, they finally did find there was a standing, but they went through the analysis, and they said they could be a bidder, or they were a prospective bidder, so we had to look at the prejudice. And in that case, because they had a poor D&B rate, down-at-brand street rating, et cetera, they said, well, you don't have any chance for the award. All reasons that are not applicable here. But the key language in that decision, and this is at 95 Federal Claims at page 724. I'm just going to read this language. If MMIC was prevented from bidding on the contract in violation of controlling statutes and regulations, including SECA's requirement for fair and open competition, and if MMIC had a substantial chance of prevailing in an open procurement, then in the interest of fairness, the plaintiff should be considered an interested party as an exception to the general rule and dictates of SECA that a non-FSS contractor is not allowed to protest on an FSS award. Okay. Thank you, Mr. Bellman. We're out of time. Okay. Thank you very much. Thank you both, counsel. The case is submitted. That concludes our session for today. All rise. The court is now adjourned until tomorrow morning at 10 a.m.